IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-303 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES KIM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.    INTRODUCTION.**

In 2013, Defendant James Kim was sentenced to 180 months in prison after pleading guilty to having conspired to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. In 2015, this court reduced Kim's prison sentence to 168 months in light of a retroactive reduction in the sentencing guideline range. *See* 18 U.S.C. § 3582(c)(2). Kim has served approximately 8 years of his 14-year sentence and, with anticipated good time credit, has a projected release date of November 17, 2024. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Kim's request is based on the COVID-19 pandemic. He contends that his age (60) and underlying medical conditions (hypertension, high cholesterol, and diabetes) make him vulnerable to complications if he contracts COVID-19. Kim is

housed at FCI Lompoc, which, on May 7, 2020, reported that Kim had tested positive for COVID-19. The medical records do not report that he exhibited any symptoms. ECF No. 67, PageID # 320. Now, a month later, it is difficult for this court to conclude that Kim is likely to suffer complications. It is equally difficult for this court to determine whether he might be reinfected or might now have some form of immunity from the virus. These circumstances, coupled with Kim's concerning record (including alleged violence and escape) lead this court to conclude that Kim has, at least so far, not established extraordinary and compelling reasons that warrant a reduction in his sentence.

**II.     ANALYSIS.**

Kim's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements.  *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Kim has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).

Kim submitted an administrative compassionate release request to the warden of his prison more than 30 days before filing this motion.  *See* ECF No. 64, PageID # 217.  He has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).  The Government is not contesting Kim's satisfaction of the exhaustion requirement.

### B. Kim has not demonstrated that extraordinary and compelling circumstances justify his early release.

This court therefore turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release

motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. Although, as Kim notes, this court in an earlier ruling saw no need to rule on the scope of its discretion, *see United States v. Maka,* 2020 WL 2544408 (D. Haw. May 19, 2020), this court has subsequently ruled that it reads § 3582(c)(1)(A) as allowing this court considerable discretion, notwithstanding the absence of an amended policy statement from the Sentencing Commission reflecting the discretion now given to courts under that statute. *See United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).

The Government asserts that Kim's diabetes constitutes an "extraordinary and compelling reason" but that release is nevertheless not warranted. *See* ECF No. 71, PageID # 375. After seeing the Government parse the statutory language this way in numerous prior filings, this court recently questioned how the Government can deem a reason to be "extraordinary and compelling" if it does not warrant release. *See Scher*, 2020 WL 3086234, at *1. The Government is separating the words "extraordinary and compelling reasons" from the immediately following words

("warrant such a reduction") in the statute.  The statute requires a court to find "that extraordinary and compelling reasons warrant such a reduction."  This language is of a piece, and this court does not see how it can conclude that there is an "extraordinary and compelling reason" that does not warrant release.  Treating Kim's reasons as "extraordinary and compelling" and only then turning to whether he should be released requires treating in isolation words in § 3582(c)(1)(A) that cannot justifiably be isolated from the idea that the extraordinary and compelling reasons must be reasons that *warrant* a reduction.  Of course, a party is the master of the arguments it advances, but the court would be likelier to accept the Government's parsing of the statutory language if the Government explained the basis for isolating "extraordinary and compelling reasons" from "warrant such a reduction."

Kim's motion is premised on his asserted risk of developing serious complications from COVID-19.  Kim says that the coronavirus has spread rapidly at FCI Lompoc, that prison officials cannot prevent him from being infected, and that infection poses particular dangers to him.  *See, e.g.*, ECF No. 64, PageID # 222.

This court begins by looking at the situation at FCI Lompoc.  In a different case, this court granted a compassionate release motion after studying the situation in the adjacent USP

Lompoc.  *See Kamaka*, 2020 WL 2820139, at *3.  In the present case, the parties are disputing just how serious the situation is at FCI Lompoc.  The Government asserts that there are now few active cases at FCI Lompoc, given measures the Bureau of Prisons has allegedly taken to halt what had been the serious spread of the virus at that facility.  *See* ECF No. 73-3, PageID # 446.  The court has consulted the BOP's website on the matter, noting that there is now reportedly a single inmate and 6 staff members with positive tests for COVID-19, that there have been 2 inmate deaths, and that 884 inmates and 12 staff members have reportedly recovered after earlier testing positive.  *See* www.bop.gov (last visited June 15, 2020).  Kim challenges both the accuracy of the Government's statistics and the efficacy of its protective measures, claiming that there have actually been 3 deaths.  *See, e.g.*, ECF No. 75, PageID # 452-53; ECF No 79-1; ECF No. 79-2.  With inmate deaths and with 884 earlier positive tests among inmates, Kim's concern is readily understandable.

If the only evidence facing this court were FCI Lompoc's statistics and Kim's age, hypertension, high cholesterol, and diabetes, it is highly likely that this court would grant Kim's compassionate release motion to protect him from the coronavirus.  But the situation here is complicated by other evidence in the record.  Most notably, Kim was tested for COVID-19 on May 6, 2020, and the test came back positive on May

7, 2020, more than a month ago.  ECF No. 67, PageID # 320.  That raises two issues.  First, the medical records do not indicate that Kim displayed any symptoms at all, calling into question his argument that he would likely develop complications.  During a telephone call with his counsel on June 8, 2020, Kim reported being "stuffy" and having body aches.  See ECF No. 75-1, PageID # 465.  In emails, he added headaches and an "abnormal heart rhythm" to his symptoms, noting that a virus could stay in a body for years and complaining that prison staff were not really checking up on inmates.  See ECF No. 79.  Whether, a month after his positive test, what Kim was experiencing were symptoms of COVID-19 is impossible for this court to know based on the present record.  The most the court can glean is that Kim was not describing the kind of serious symptoms he is arguing he at risk for.  In actuality, there is no way for this court to know whether Kim's test was a false positive, but, if the test was accurate, it appears that Kim may have survived the virus without developing serious complications.

        Second, based on the present record, this court cannot tell that there is a substantial risk that Kim will be reinfected.  Individuals infected by certain other viruses have at least some immunity against future infection, although the strength and length of that immunity may vary.  Kim cites some sources indicating that it is too soon to be sure that the same

is true for individuals who contract COVID-19.[1]  See ECF No. 64, PageID # 223.  This court is acutely aware that no one completely understands how the coronavirus operates.  There appears to be some evidence suggesting that recovery from COVID-19 confers at least temporary immunity against reinfection.[2]  This court is in no position to make a definitive determination about immunity, but the combination of Kim's lack of complications after testing positive and the possibility of some form of immunity cannot be ignored in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence.

---

[1] In a supplemental filing, Kim states that some inmates who tested positive later tested negative before testing positive again.  ECF No. 79-1, PageID # 513.  This court cannot determine whether the negative test was a false negative or whether the individuals were actually reinfected.

[2] See, e.g., Dr. Robert D. Kirkcaldy, et al., COVID-19, Postinfection Immunity Limited Evidence, Many Remaining Questions, J. of the Am. Medical Ass'n, at 2246, available at https://jamanetwork.com/journals/jama/fullarticle/2766097 ("[E]xisting limited data on antibody responses to SARS-CoV-2 and related coronaviruses, as well as one small animal model study, suggest that recovery from COVID-19 might confer immunity against reinfection, at least temporarily. However, the immune response to COVID-19 is not yet fully understood and definitive data on postinfection immunity are lacking.") (last visited June 9, 2020); Dr. Francis Collins, NIH Director's Blog: Study Finds Nearly Everyone Who Recovers From COVID-19 Makes Coronavirus Antibodies, available at https://directorsblog.nih.gov/2020/05/07/study-finds-nearly-everyone-who-recovers-from-covid-19-makes-coronavirus-antibodies/ ("Although more follow-up work is needed to determine just how protective these antibodies are and for how long, these findings suggest that the immune systems of people who survive COVID-19 have been primed to recognize SARS-CoV-2 and possibly thwart a second infection.") (last visited June 9, 2020).

The court has additional concerns about releasing Kim early. Kim has served less than two-thirds of his sentence. The court might not be overly influenced by that if there were not also in the record suggestions that Kim might pose a danger to the community if released. Not only did he have a drug trafficking conviction in Korea and a prior federal drug trafficking conviction, he also had a battery conviction for having punched his girlfriend in the mouth. ECF No. 46, PageID # 117-18. Even now, he has an outstanding arrest warrant relating to a separate assault allegation. *Id.* at 119. Kim presents little evidence showing that he has been rehabilitated. Indeed, he attempted to escape from FCI Lompoc in 2017. ECF No. 56. In short, his record is not encouraging.

This court certainly wishes it knew more about the situation at FCI Lompoc, about the accuracy of Kim's positive test, and about whether Kim might have some form of immunity from COVID-19. But of course this court must rule based on what it has. Given the totality of the information before it, this court concludes that it does not have an extraordinary and compelling reason to reduce Kim's sentence.

**III.    CONCLUSION.**

Kim's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, June 15, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Kim*, Cr. No. 13-303 SOM; ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE