IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00303 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES KIM, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.       INTRODUCTION.**

In 2013, Defendant James Kim was sentenced to 180 months in prison after pleading guilty to having conspired to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  In 2015, this court reduced Kim's prison sentence to 168 months in light of a retroactive reduction in the sentencing guideline range.  *See* 18 U.S.C. § 3582(c)(2).  Kim has served approximately 8 1/2 years of his 14-year sentence and, with anticipated good time credit, has a projected release date of November 17, 2024.[1]  Kim has filed a second request for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  This court denied his first request on June 15, 2020.  *See* ECF No. 81.

---

[1] Kim says he has served about 103 months of his sentence. *See* ECF No. 93, PageID # 738.

Like his first request, Kim's second request is based on the COVID-19 pandemic. His first request contended that his age (60) and underlying medical conditions (hypertension, high cholesterol, and diabetes) made him vulnerable to complications if he contracted COVID-19. His second request added a new medical condition, chronic kidney disease, to the list of medical conditions making him vulnerable to a severe case of COVID-19. *See* ECF No. 82.

Kim is housed at FCI Lompoc, which currently has no inmates or staff with active COVID-19 cases but previously had a large COVID-19 problem, with 606 inmates and 23 staff having recovered from the virus and 3 inmates having died from it. https://www.bop.gov/coronavirus/ (last visited May 5, 2021). FCI Lompoc, a low security federal correctional institution, currently houses 825 inmates in a setting that makes social distancing difficult. https://www.bop.gov/locations/institutions/lof/ (last visited May 5, 2021). However, 351 inmates at FCI Lompoc have been fully vaccinated against the COVID-19 virus, *see* https://www.bop.gov/coronavirus/ (last visited May 5, 2021), and more than 73% of the inmate population has already had the virus. Kim says he received a COVID-19 vaccination on March 2, 2021. *See* ECF No. 82, PageID # 527; ECF No. 86-16, PageID # 623 (copy of his vaccination card). Given the passage of time since his

first vaccination, Kim is likely one of the 351 inmates who are now fully vaccinated against COVID-19. This means Kim is unlikely to get COVID-19 and, if he does, it is not likely that he will have a severe case of it.

For the reasons set forth in this court's earlier order and for the additional reasons discussed in the present order, the court denies Kim's second request for compassionate release.

**II.        ANALYSIS.**

Kim's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he

filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with any applicable Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Kim has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).

Kim submitted an administrative compassionate release request to the warden of his prison, who denied that request more than 30 days before the filing of this motion. *See* ECF No. 86-1, PageID #s 559-60. The Government concedes that Kim has therefore satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 92, PageID #s 705-06 ("The defendant has . . . met the statutory requirement set forth in 18 U.S.C. § 3582(c)(1)(A) and his motion is properly before the court.").

### B. Kim has not demonstrated that extraordinary and compelling circumstances justify his early release.

This court therefore turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. As noted in this court's order denying Kim's first request for compassionate release, this court has considerable discretion in determining whether a particular

defendant has established the existence of extraordinary and compelling reasons that justify early release. *See* ECF No. 81, PageID # 519.  This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).  Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.

Recently, in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021) (per curiam), the Ninth Circuit expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A).  Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not

applicable policy statements that are binding on this court, they may inform this court's discretion. *See id.* at 802.

Following this court's denial of Kim's first motion for compassionate release, Kim was diagnosed with chronic kidney disease. Given his numerous medical conditions, there is no question that, if he contracts COVID-19, Kim is recognized under current CDC guidelines as being at an increased risk of developing complications. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 5, 2021).

The Government contends that Kim's chronic kidney disease appears to be well managed. While recognizing the seriousness of Kim's new diagnosis, this court cannot ignore Kim's recovery from an earlier COVID-19 infection. Not only is that evidence that Kim may not have to endure serious complications, it also suggests that Kim may have the protection of antibodies resulting from the earlier infection. *See* ECF N0. 81, PageID #s 522-23. The risk Kim faces from COVID-19 is further tempered by Kim's vaccination against COVID-19 and by the absence of any current cases of COVID-19 at FCI Lompoc. In addition, more than 73 percent of the inmates who were held at FCI Lompoc in the earlier months of the pandemic contracted COVID-19 and, for those still at Lompoc, may thus have a reduced chance of being reinfected or of passing the disease on to Kim.

And, as noted earlier, 351 of the 825 inmates have been fully vaccinated against COVID-19. In the face of these factors, it is difficult for this court to conclude that the combination of COVID-19 and Kim's medical conditions, including the newly diagnosed chronic kidney disease, justifies Kim's early release.

This court is by no means suggesting that Kim has any guarantee against infection. The court is well aware that, as Kim indicates in his Reply, there have been reports of individuals who have gotten reinfected even after recovering from COVID-19. These reports, while isolated, are concerning. The court is also well aware that no vaccine manufacturer claims that its product provides 100 percent protection against infection. But Kim does not establish that these risks are so great that they warrant his release now.

This court further recognizes that, from Kim's point of view, it may appear anomalous that his earlier COVID-19 infection and the earlier rampant infection throughout FCI Lompoc somehow weigh against his early release at this time, instead of being deemed evidence that he has had more than his share of difficulty dealing with the pandemic. In considering those circumstances, this court is not ignoring what Kim has gone through. While keeping Kim's difficulties firmly in mind, this court is required to address the actual facts before it in assessing the risks that have to affect any decision.

One of the risks that this court identified in its order denying Kim's first request for compassionate release was reflected in Kim's criminal history.  Not only did he have a drug trafficking conviction in Korea and a prior federal drug trafficking conviction, he also had a battery conviction for having punched his girlfriend in the mouth.  ECF No. 46, PageID # 117-18.  Additionally, he had attempted to escape from FCI Lompoc in 2017.  ECF No. 56.  Kim has taken educational courses in prison and has not had any recent disciplinary history, *see* ECF No. 86-19, PageID #s 628-29, but, at least at this point, that recent activity is not encouraging enough to warrant release ahead of the 2024 scheduled date.

Having considered the amount of time remaining on Kim's sentence, his history, and the totality of the medical information he has submitted, including prior exposure to COVID-19 and his COVID-19 vaccination status, this court determines that the reasons raised by Kim do not rise to the level of being extraordinary and compelling reasons warranting a reduction in his sentence.

**III.    CONCLUSION.**

Kim's second request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, May 6, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Kim*, Cr. No. 13-00303 SOM; ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE