IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00303 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES KIM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.        INTRODUCTION.**

In 2013, pursuant to a plea agreement, Defendant James Kim entered a plea of guilty to having conspired to possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  This court sentenced him to 180 months of imprisonment, 5 years of supervised release, and a $100 special assessment.  *See* ECF Nos. 36 and 48.

On July 10, 2015, pursuant to  18 U.S.C. § 3582(c)(2), Kim's sentence of imprisonment was reduced to 168 months (14 years) given the retroactive reduction in his guideline sentencing range.  *See* ECF No. 52.  He has served approximately 10 1/3 years of his sentence, has a projected release date of November 17, 2024, and is currently incarcerated at Lompoc FCI. *See* Presentence Investigation Report, ECF No. 46, PageID # 110

(indicating that he has been in custody since August 2012);
https://www.bop.gov/inmateloc/ (input Register Number 26850-112)
(last visited November 18, 2022).  He now moves for compassionate
release under 18 U.S.C. § 3582(c)(1)(A).

Lompoc FCI at one time had a big COVID-19 problem.
However, as of November 18, 2022, no inmates and six staff
members currently have COVID-19.  Additionally, Lompoc FCI
appears to have vaccinated many of its inmates against COVID-19.
See https://www.bop.gov/coronavirus/ (last visited November 18,
2022) (indicating that 2345 inmates in the Lompoc complex have
received COVID-19 vaccinations).

This is Kim's third motion for compassionate release.
On June 15, 2020, this court denied Kim's first compassionate
release request, which was based on his age (60), medical
conditions (hypertension, high cholesterol, and diabetes), and
the pandemic, determining that he had not presented an
extraordinary and compelling reason justifying his early release.
While Kim's then-existing medical conditions placed him at a
higher risk of contracting a severe case of COVID-19, the court
had difficulty concluding that Kim was likely to have such
complications because he had already contracted COVID-19 without
exhibiting any symptoms.  At that time, the court could not
determine whether Kim had any immunity from the virus as a result
of having been infected.  Kim had served less than two-thirds of

what the court had determined to be an appropriate sentence.  The court was also concerned about the danger Kim may have posed to the community, as he had a drug trafficking conviction in Korea, a prior federal drug trafficking conviction, and a battery conviction for having punched his girlfriend.  Kim also presented little evidence of having been rehabilitated and had even tried to escape in 2017.  *See* ECF No. 81.

On May 6, 2021, this court denied Kim's second motion for compassionate release.  The difference between Kim's first and second motion was the addition of another medical condition, chronic kidney disease.  This court was unpersuaded that the new medical condition changed the court's earlier analysis or justified Kim's early release.  *See* ECF No. 94.

On April 14, 2022, Kim filed the present motion.  *See* ECF No. 95.  This time, in addition to hypertension, high cholesterol, diabetes, and chronic kidney disease, Kim says he has been diagnosed with prostate cancer, Barrett's esophagitis, and gastrointestinal dysmotility disorder.  His third motion argues that he should be released for the reasons set forth in his previous motion, because he has new medical conditions, and because the Bureau of Prisons is not treating his cancer.  *Id.*

On April 17, 2022, Kim submitted a compassionate release request to the warden of his facility that asked for his release based on his diagnoses of prostate cancer, Barrett's

esophagitis, diabetes, chronic kidney disease, hypertension, and gastrointestinal dysmotility disorder.  *See* ECF No. 97.

   This court asked the Office of the Federal Public Defender whether it was willing to represent Kim in this matter. *See* ECF No. 96.  That office made an appearance on his behalf and submitted a letter dated April 28, 2022, indicating that the warden had denied Kim's administrative request for compassionate release.  *See* ECF No. 101-1.

   To avoid any issue with respect to Kim's compliance with the administrative requirements, counsel for Kim refiled his motion on July 18, 2022.  *See* ECF No. 108.

**III.**  **ANALYSIS.**

   Kim's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with

applicable policy statements issued by the
Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must initially determine that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request. If a defendant has satisfied the exhaustion requirement, then the court may only exercise its discretion after examining three considerations.  First, it must find that extraordinary and compelling reasons warrant a sentence reduction.  Second, it must find that such a reduction is consistent with the Sentencing Commission's policy statements (assuming there are any policy statements applicable to this motion).  Third, it must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to determine under the particular circumstances presented that the requested reduction in sentence is warranted.  *See United States v. Wright*, 42 F.4th 1063, 1070 (9th Cir. 2022)*; United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).  "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds."  *Wright*, 42 F.4th at 1070-71.

**A.   Kim Has Satisfied the Administrative Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A).**

As to exhaustion, Kim submitted an administrative

5

compassionate release request to the warden of his prison, who has denied that request, and Kim has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).

**B.   This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).  Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is

6

outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.  *Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

Recently, the Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A).  Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy statements that are binding on this court, they may inform this court's discretion.  *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

**C.   Kim Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release.**

Kim bears the burden of establishing an extraordinary and compelling reason warranting compassionate release.  *See United States v. Kanohokula*, 2021 WL 5411211, at *4 (D. Haw. Nov. 18, 2021).  While the record establishes Kim's prostate cancer,

7

it is not clear whether he has Barrett's esophagus, gastrointestinal dysmotility disorder, or diabetes.  Instead, the record indicates that he has gastritis, gastro-esophageal reflux disease, and prediabetes in 2022, although there are references to Type 2 diabetese mellitus in 2021.  Additionally, Kim's blood pressure on April 26, 2022, was 118/80 but was 132/84 a month earlier.  *See* ECF No. 105, PageID #s 873-74, 879, 894, 908, 912, 921, 934.  The record reflects that Kim has calculus of kidney (crystals or stones in the kidney), rather than chronic kidney disease.  *See* ECF No. 105, PageID #s 893, 911-912, 954, 1007, 1054.  As this court previously ruled, Kim's medical conditions place him at a higher risk of a severe case of COVID-19.  However, for the reasons set forth in the court's denials of his previous two compassionate release motions, Kim's medical conditions are not sufficient to demonstrate extraordinary and compelling circumstances justifying his compassionate release in light of the pandemic.

While Kim's medical conditions are certainly concerning, the court is most troubled by his prostate cancer diagnosis and what Kim describes as the Bureau of Prisons' failure to timely treat it.  In August 2021, Kim had an MRI of his pelvis that revealed that a "significant cancer is likely to be present."  *See* ECF No. 115, PageID # 1198.  In October 2021, a Bureau of Prisons doctor put in an urgent request for a

8

consultation with a urologist "for suspected Cancer of the
prostate." *See* ECF No. 115, PageID # 1200.  In December 2021,
the doctor repeated his request for Kim to see a urologist to get
a prostate biopsy "for suspected cancer of the prostate." *See*
ECF No. 115, PageID # 1199.

Notwithstanding the likely cancer shown by the August
2021 MRI, it took until March 24, 2022, for Kim to be diagnosed
with a malignant neoplasm of his prostate, which was described as
a "Favorable intermediate risk prostate cancer." *See* ECF No.
105, PageID #s 953, 1018; ECF No. 115, PageID # 1222.  On March
29, 2022, he again met with the urologist, who told Kim about his
treatment options (active surveillance, radiation, hormonal
therapy, cryoablation, and focal therapy) and asked him return in
two weeks (April 12, 2022).  *See* ECF No. 105, PageID #s 1017-19.

Kim did not go back to the urologist in two weeks.
Instead, the Bureau of Prisons doctor waited until April 13,
2022, to request another urologist consultation, explaining that
Kim had been seen by the urologist, had a "clinically locali[z]ed
prostate cancer," and had had his options for management of his
cancer presented and discussed.  ECF No. 117, PageID # 1239.
Because no treatment plan had been finalized in March 2022, the
doctor sought to refer Kim to the urologist for "further
discussion and management of prostate cancer." *Id.*  That
appointment was not scheduled with the urologist until July 11,

2022, nearly 4 months after the urologist asked Kim to return in two weeks to discuss treatment options. *See* ECF No. 105, PageID # 878.

In August 2022, Kim told his attorney that he had not seen the urologist since March 2022. *See* ECF No. 110, PageID # 1159; ECF No. 110-1, PageID # 1162. The Government explained that Kim did not actually see the urologist as scheduled on July 11, 2022, due to a prison staffing shortage that day. *See* ECF No. 112-1, PageID # 1180.

On July 21, 2022, Bureau of Prison staff sent a request to reschedule Kim's appointment with the urologist so that a treatment plan could be put in place. *See* ECF No. 112-1, PageID # 1181. However, because there is only a single urologist in the area, it takes from two to six months to get an appointment with him. *Id.*

According to the Government, Kim finally had an appointment with the urologist on October 3, 2022. *See* ECF No. 119, PageID # 1400. Kim summarized that appointment in an email to his counsel, which has since been filed with this court. *See* ECF No. 124-1. Kim says the urologist wanted to do a PSA blood test to determine whether the prostate cancer has metastasized. *Id.* Kim says the urologist wanted Kim to see a radiation oncologist to discuss the radiation options being used before resorting to surgery. Kim says the urologist wanted to do

10

another MRI to see how much the cancer has progressed before surgically removing the prostate.  Kim says the urologist could not give him a time line because the Bureau of Prisons controls scheduling and approval of such appointments and procedures.  *Id.*

According to the Government, Kim was scheduled to have his blood drawn for a PSA test during the week of October 31, 2022.  Kim supposedly had a radiological consultation on November 2, 2022, and a radiation oncology consultation on November 9. 2022.  Kim also has a urology consultation on November 18, 2022. *See* ECF No. 129, PageID # 1446.

While Kim's prostate cancer treatment has been unquestionably delayed, Kim presents no medical evidence that that delay has affected his prognosis.  It may well have done so, in which event he may have a civil claim.  However, it does appear that Kim is finally receiving treatment for his prostate cancer.  At this point, the court cannot say that an ongoing lack of treatment amounts to an extraordinary and compelling reason justifying his early release.  Of course, should timely treatment of Kim's prostate cancer cease, this court may be asked to reconsider this order.  *See United States v. Saccoccia*, 10 F.4th 1, 6 n.5 and 7 (1st Cir. 2021) (noting that a district court may find the existence of an extraordinary and compelling reason sufficient to justify compassionate release based on the Bureau of Prison's ability to treat prostate cancer within the federal

11

prison system, and suggesting that material interference or stonewalling on the part of the Bureau of Prisons in treating an inmate's prostate cancer might satisfy the extraordinary and compelling standard).

In sum, for the reasons set forth in the court's previous orders denying Kim's first two compassionate release motions, this court again denies his third compassionate release motion. Even after considering Kim's medical conditions, his history with the virus, the threat that he still may pose to the community, and the COVID-19 pandemic, the court finds that Kim has failed to demonstrate an extraordinary and compelling reason that warrants a reduction in his sentence. Additionally, the Bureau of Prisons' delay in treating his prostate cancer does not justify Kim's early release, as it appears that the Bureau of Prisons is actually treating his prostate cancer at this time. If the Bureau of Prisons ceases or otherwise stonewalls that actual treatment, Kim may file another compassionate release motion or seek reconsideration of this order.

## III.        CONCLUSION.

Kim's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, November 18, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


*United States v. Kim*, Cr. No. 13-303 SOM; ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE